**MORRIS et al. v. MORRIS.   (No. 2984.)***

(Court of Civil Appeals of Texas. Texarkana. Dec. 24, 1924. Rehearing Denied Jan. 8, 1925.)

**1. Wills ⬅163(1)—Burden of proving undue influence on contestant.**

In will contest, the burden of proving undue influence is on contestant.

**2. Wills ⬅52(1)—Burden of proving mental capacity on proponents.**

In will contest, the burden of proving testator's mental capacity is on proponents.

**3. Wills ⬅55(1)—Evidence held to sustain finding that testatrix had mental capacity.**

In will contest for undue influence and mental incapacity, as to testatrix's mental capacity, conflicting evidence *held* to sustain finding of jury in favor of proponents.

**4. Wills ⬅302(3)—Evidence held to warrant inference that testatrix familiar with will at time of signing and executing it.**

Where testatrix and her husband executed joint will in handwriting of husband, evidence that testatrix was able to read and write, and was in normal condition at time of signing will, and lived several years after its execution without showing dissatisfaction therewith, *held* to warrant inference that she was familiar with instrument at time of execution thereof.

**5. Wills ⬅330(1)—Instruction on mental capacity held not objectionable as failing to include ability to comprehend relatives and extent of property in view of evidence.**

An instruction on mental capacity, requiring that testatrix should know what she was doing and its effect, *held* not objectionable in failing to include capacity of testatrix to know objects of her bounty, and their claims upon her, and the general nature of her property, in view of evidence.

**6. Wills ⬅384—Instruction on undue influence, if error, held harmless, where evidence did not warrant finding of undue influence.**

In will contest, error, if any, in an instruction on undue influence, *held* harmless, where evidence did not warrant finding in contestant's favor on such ground.

**7. Wills** ⬤⟳384—**Admission of testimony as to testatrix's husband's statements made in her presence, if improper, held harmless.**

In proceeding to probate joint will, of testatrix and her husband, admission of testimony as to statements of testatrix's husband, in presence of testatrix, at time of execution of prior will, if improper, *held* not ground for reversal, since it might be assumed from her silence that she fully acquiesced in what her husband said.

**8. Wills** ⬤⟳292 — **Testimony that testatrix above average woman in intelligence, not objectionable.**

Testimony of witness, in will contest, that testatrix was above the average woman in intelligence, was not objectionable.

**9. Wills** ⬤⟳164(6)—**Testimony as to ill treatment and undue influence over testatrix long after execution of will properly excluded.**

In will contest, testimony as to ill treatment and undue influence over testatrix by her husband, occurring long after execution of will, *held* properly excluded.

Appeal from District Court, Camp County; R. T. Williams, Judge.

Application by R. A. Morris to probate the will of Mrs. Sallie L. Morris, deceased, contested by Archie F. Morris and others. From judgment probating will, contestants appeal. Affirmed.

Ernest Bryson, of Pittsburg, and Clark & Clark, of Greenville, for appellants.

J. H. Beavers, of Winnsboro, J. A. Ward, of Mt. Pleasant, and J. D. Bass and C. G. Engledow, both of Pittsburg, for appellee.

HODGES, J. This appeal is from a judgment probating the will of Mrs. Sallie L. Morris, who died in Hunt county, Tex., May 16, 1923. Mrs. Morris was the wife of the appellee, R. A. Morris, who resides in Camp county, Tex. They together owned a large community estate consisting of both real and personal property. On September 9, 1919, the appellee and the decedent executed a joint will, in which they disposed of their entire property. At that time they had children who were grown and married, and some grandchildren without parents. No provision was made in the will for any of the children or grandchildren. The survivor was to take the entire estate upon the death of the other party to the will. In August following the death of his wife, the appellee offered the will for probate. His application was resisted by the appellants, his children and grandchildren, upon the grounds: (1) The mental incapacity of Mrs. Morris, and (2) undue influence exercised by Mr. Morris. Both of these issues were submitted in the form of special interrogatories, and were answered by the jury favorably to the proponent. This appeal is pros-

ecuted by the contestants from the judgment entered upon those findings.

[1] In discussing the questions here presented, we may eliminate those relating to undue influence. Upon that issue the appellants had the burden of proof, and the sufficiency of the evidence to support the adverse finding of the jury is not seriously questioned.

[2, 3] Upon the other issue, mental capacity, the appellee had the burden of proof, and appellants insist that the evidence relied on to support the finding of the jury is not sufficient.

The record shows that the will was in the handwriting of the appellee and was witnessed by Dale Ellington, then an unmarried woman, and Hooper Ellington. These parties were the niece and nephew of Mrs. Morris. Miss Ellington, who at the time of the trial was Mrs. Edmonds, testified, in substance, that she was called upon to go to the house of Mr. and Mrs. Morris for the purpose of witnessing their will; that she and her brother went into the dining room, where Mr. and Mrs. Morris were. Mr. Morris was standing with the paper in his hand. He told witness that it was their will and he wished them to sign it as witnesses. He suggested to Mrs. Morris that she make a similar request, which was done, and the will was signed by all the parties as it appeared upon the day of the trial. She also testified that she had known Mrs. Morris for a number of years, and that the latter was at the time of sound mind. Hooper Ellington testified substantially to the same facts, and further stated that Mrs. Morris said at the time that they had made a former will, but all of the witnesses except one were dead. He also testified that Mrs. Morris was of sound mind when she executed the will.

The contestants introduced a number of witnesses who testified that Mrs. Morris had for years been addicted to the use of narcotic drugs, and that her mind had become impaired. They gave it as their opinion that she was not of sound mind for several years prior to the execution of the will and afterwards. No parties were present at the time the will was executed except Mr. and Mrs. Morris and the two subscribing witnesses. In rebuttal, the proponents introduced a number of witnesses who had known Mrs. Morris continuously for many years prior to and after the execution of the will. These testified that Mrs. Morris' mind was sound and that she was fully capable of understanding what she was doing at the time she made the will. There is thus presented a conflict in the evidence upon the issue of mental capacity, and we find no reason for setting aside the finding made by the jury upon that issue.

[4] Contestants contend that the evidence

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was insufficient to justify admitting the will to probate, because there was no proof that Mrs. Morris had read the will before signing it, or was familiar with its contents. As previously stated, the instrument was in the handwriting of appellee, and no one testified that Mrs. Morris read the will or that its contents were previously made known to her by her husband.

As supporting the proposition that the evidence should in this case affirmatively show that Mrs. Morris knew the contents of the will, contestants refer to several cases, but rely principally upon Kelly v. Settegast, 68 Tex. 19, 2 S. W. 870. In that case Judge Stayton said:

"Ordinarily, the fact that a person has executed a testamentary paper, in the mode prescribed by law, is deemed sufficient evidence that the instrument speaks the language which the testator desires to use, and truly reflects his wishes in regard to all matters of which it speaks. The fact that a testator knew and understood the contents of a paper which he executed as a will is a necessary fact to be established before any will can be admitted to probate. If a person of sound mind, able to read and write, and in no way incapacitated to acquire knowledge of the contents of a paper, by exercising the faculties he has, signs a testamentary paper, and has it witnessed as required by the statute, then, upon proof of these facts, the will ought to be admitted to probate without further proof that the testator knew the contents of the paper, unless suspicion in some way be thrown upon it; for it is to be presumed that every such man examines and knows the contents of every instrument he executes, and especially so when it is made for the purpose of disposing of his estate in the solemn form required by law in the making of wills. It has consequently been held that such a person need not be shown to have had knowledge of the contents of a will which he executed under the forms required by law, 'for, when the capacity of a testator is perfect, his knowledge of the contents of his will is presumed from the fact of execution.' The same rule has been held in cases of wills made by persons blind or illiterate, when the will was not written by a person taking benefits under it, was not contrary to the natural affections which a testator similarly situated would likely entertain, and when circumstances casting suspicion upon it are not shown. Hemphill v. Hemphill, 2 Dev. 291; King v. Kinsey, 74 N. C. 261.

"In the case before us the paper claimed to be the will of Kelly was written by the person who under it would take one-half of his estate, which seems to be considerable, though, at the suggestion of one of the persons who subsequently became a subscribing witness, it was copied by another person. The deceased was incapable of ascertaining its contents by inspecting it, and it is an unnatural will in that it gives all of his estate to strangers to his blood, and ignores the claims which children have on parental affection, however much they may have wandered from a correct course of life. In such a case we are of the opinion that it should be shown that the testator correctly understood the contents of the paper which he signed, and that the mere formal proof of the execution of the paper is not enough to entitle it to probate. Harrison v. Rowan, 3 Wash. 585; Beall v. Mann, 5 Ga. 469; Harris v. Harris, 53 Ga. 683; Rollwagen v. Rollwagen, 63 N. Y. 517; Wheeler v. Alderson, 3 Hagg. 574; Billinghurst v. Vickers, 1 Phillim. 187, 199; Paske v. Ollat, 2 Phillim. 321; Schouler, Ex'rs, 75; Williams, Ex'rs, 23; 3 Redf. Wills, 47; 1 Redf. Wills, 529.

"This case comes before us surrounded with facts which call for clear proof that Kelly knew the contents of the paper offered for probate. The deceased was in poor health. He was surrounded by those who take benefit under it. It is not shown that he gave any instructions in regard to a will. It was written by one who was deeply interested in having such a will made. The making of it was kept secret from his only living child, though she seems to have been in the same house. One taking under it, in part, at least, suggested who should be present at its execution; and it is unnatural, in that it denies to those most nearly related to the deceased any part of his estate, and was executed by one not in possession of means within himself to ascertain its contents."

In this case the facts are very materially different. In the first place, the will was not an unnatural disposition of property—it went to the husband of the testatrix. She was a beneficiary as well as a maker. Such wills are by no means uncommon in this country. Mrs. Morris was able to read and write. Some of the witnesses stated that she was well educated and above the average in intelligence, and at the time she signed the will was, apparently, in her normal condition. We may easily presume from the confidential relations usually existing between husband and wife that Mr. and Mrs. Morris had previously discussed the terms of the will and had agreed on this method of disposing of their property. Ellington, one of the subscribing witnesses, testified that she stated in his presence that they had made a will on a former occasion, but that all of the witnesses except one were then dead. If the evidence justified the jury in finding that Mrs. Morris was of sound mind, the testimony relied on to support that conclusion warrants the inference that she was familiar with the instrument she was then executing. 1 Underhill on Wills, § 137, and cases cited in notes. Mrs. Morris lived several years after that transaction, and there is no evidence that she became dissatisfied with what she had done.

[5] Contestants objected to the following explanatory charge upon the issue of mental capacity given by the court:

"Sound mind, as used in this charge, means that the party making the will at the time of executing the same had sufficient mental capacity, that is, his or her mind and memory were sufficiently sound to enable him or her to know what is being done and the effect of

the acts at the time of the execution of the will."

The main objection to the charge is that it was too restricted. They requested the following, which was refused:

"Gentlemen of the jury, you are instructed that in order for a person to be competent to make a will, it is necessary that such person possess testamentary capacity. By the words 'testamentary capacity' is meant that the person making the will must at the time the will is executed have sufficient ability to understand the business in which she is engaged, the effect of her acts in making the will. the capacity to know the objects of her bounty and their claims upon her, and the general nature of her property."

The charge given contained all of the substance of the one refused, unless it be the following:

"The capacity to know the objects of her bounty and their claims upon her, and the general nature of her property."

There is in this case no evidence to justify an inference that Mrs. Morris did not know her husband and her children, and comprehend their relations to her. There was nothing to indicate that she did not understand her property rights, except the testimony of appellants' witnesses that her mind was weak and unsound as a result of the continued use of a drug. If, as stated by the court in the charge given, at the time of executing the will she had intelligence enough to know "what she was doing, and its effect," there would be no justification in this record for refusing to give effect to her wishes. While the testimony is conflicting, the great weight of it tends to show that at the time of executing this will Mrs. Morris had sufficient intelligence to dispose of her property in any manner she saw proper, and that this instrument is a fair expression of her wishes.

[6] Appellants also objected to the explanatory charge of the court on the issue of undue influence. It is sufficient, in disposing of that assignment, to say that the evidence did not warrant a finding in favor of appellant upon that ground, and the error, if any, in the charge given was harmless.

[7] Among the witnesses called by the proponent was one J. C. Miller, who testified, in substance, that he had known Mrs. Morris for a number of years, and that her mind was sound; that several years before the execution of the last will Mr. and Mrs. Morris came to his house with an instrument which they requested witness and his wife to sign as witnesses. Morris had the paper in his pocket, pulled it out, and handed it to witness, and said he wanted witness and his wife to witness a joint will; that he was conveying his property to her, and she was conveying hers to him, and they did not want any "hereafter" about the will. Mrs. Morris was present, and witness does not recall that she said anything. Miller and his wife both signed the instrument as requested. This testimony was objected to on the ground that it was irrelevant, immaterial, prejudicial to the contestants, and was hearsay. If the declarations coming from Morris had been made by Mrs. Morris on that occasion, they would clearly have been admissible in a contest of this character. Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 36 L. R. A. 64. The situation presented, however, differs but little from what it would have been had the declarations been made by Mrs. Morris instead of by Mr. Morris. When they were made, both Mr. and Mrs. Morris were present, and they were completing the execution of a will in legal form. What Morris said was in the presence and hearing of his wife. If she did not indorse it or acquiesce in it, she had the opportunity to deny the statements made. It is only reasonable to assume from her silence that she fully acquiesced in what was said by her husband. In view of the record before us, this judgment should not be reversed, even if this testimony was improperly admitted.

[8] Another witness for appellee was permitted to testify, over the objection of contestants, that Mrs. Morris was above the average woman in intelligence. Certainly the witness might have testified that she was equal to the average, and to say that she was above the average violates no rule of law.

[9] The testimony of Mrs. Pollard, offered by the contestants for the purpose of showing ill treatment and undue influence over Mrs. Morris by her husband, was properly excluded. In his qualification of the bill of exception the court states that the transaction to which the witness refers occurred just prior to the death of Mrs. Morris, and long after the execution of the will.

We conclude that the verdict of the jury is supported by the testimony, and that no reversible error was committed upon the trial.

The judgment will therefore be affirmed.