Marjorie Daniel WINN et al., Appellants,

v.

Ruby K. DANIEL et al., Appellees.

No. 16588.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 8, 1965.

Rehearing Denied Feb. 5, 1965.

Speck, Johnson & Alexander, Dallas, Fred Erisman and Wm. Hurwitz, Longview, for appellants.

Sarah Daniels, Dallas, Andress, Woodgate, Richards & Condos, and Wm. Andress, Jr., Dallas, for appellees Cecelia Daniel North et vir.

MASSEY, Chief Justice.

As tried below the case was one in which contestant sought to set aside the last will and testament of her deceased grandmother on the ground of undue influence, combined with one by which the same contestant sought to have set aside and annulled, on the ground of undue influence, an earlier deed (and correction deed) by which the grandmother had granted certain real estate to the proponents of the last will.

Verdict of the jury was for contestant, both as applied to the will and as applied to the deed transaction(s). Judgment was rendered on the verdict. An appeal was taken therefrom. Grounds relied upon were primarily predicated upon a contention that there was "no evidence" to support the verdict of the jury. We are convinced that the contention is correct.

Judgment is reversed and rendered.

Beulah M. Daniel died on August 18, 1955. Surviving her were three living daughters; Marjorie Winn, married; Mary Conrad, married; and Ruby K. Daniel, a feme sole. Also surviving her were Leonard R. Leonard, Jr. and Mary Jo Olsen, married children of a deceased daughter. Also surviving was a son, Robert Daniel. It is well to remember that the son, Robert Daniel, was alive for a period of time after his mother's death, and was a party to the proceedings in the probate court. Therein he and Ruby K. Daniel were contestants of the last will executed by their mother.

In November, 1957, Robert Daniel died. His sole heir was Cecelia Daniel North, a married woman. She replaced her father as contestant to the last will of Beulah M. Daniel, deceased, who will be hereinafter referred to as testatrix. She, Cecelia North, and Ruby K. Daniel assumed the position

of plaintiffs in a suit brought in district court to attack and have set aside the deeds executed by testatrix to Marjorie Winn and Mary Conrad.

The rural real estate over which dispute arose between the parties is land which had become quite valuable by the time of testatrix' death in 1955. This was due to the expansion of the Dallas, Texas, metropolitan area. Such expansion has continued and it is highly unlikely that any party will suffer from any depreciation in value of whatever estate in the land is received.

On November 2, 1954, the testatrix executed a deed which purported to convey the whole title to said rural real estate to her daughters, Marjorie Winn and Mary Conrad. On date of November 19, 1954, a correction deed was executed. As heretofore mentioned Cecelia North, appellee, is contending that her aunts, Marjorie Winn and Mary Conrad, induced the execution and delivery to them of the deeds in question through undue influence exercised upon her grandmother, the testatrix.

On July 2, 1955, the testatrix executed the will which we will hereinafter refer to as the "last will". At the time she was a patient in a hospital connected with the Mayo Clinic in Rochester, Minnesota. By the language of the last will the testatrix named her surviving children, named her living grandchildren by a deceased child (as standing for such deceased child), and devised to them certain property specifically set forth in subparagraphs numbered (a), (b), and (c). In respect to such property the testatrix recited, as follows: " * * I devise, give and bequeath as their sole and separate property, the following properties and interests which remain in my possession and to which I hold title. * * * " The property described under the subparagraphs were (a) a business lot in Venus, Texas; (b) real estate in Alabama (being all the real estate owned in that state) comprised of several lots; and (c) a one-twelfth interest in a gold mine, which interest had been acquired by her deceased

husband about 1914. From the briefs it appears that the properties were of small value. Indeed, the attorney for Cecelia North characterized the property as "worthless cats and dogs".

The rural real estate was never specifically mentioned anywhere in the last will, and seemingly was not considered as testatrix' property at the time of its execution. Certainly it was not so considered by Marjorie Winn or Mary Conrad. If it was actually so contemplated and considered by testatrix then it would appear that she intended it to pass under the fourth paragraph of the will, its residuary clause. Such clause reads, as follows: "I give, devise and bequeath to my daughters Mary Daniel Conrad, and to Marjorie Daniel Winn, as their sole and separate property, absolutely all the rest, residue and remainder of my estate, otherwise not already provided for, of whatsoever kind and nature, real personal and mixed and wheresoever situated, of which I may die seized or possessed or in which I may have any interest or over which I may have any power of appointment or testamentary disposition."

There had been two prior wills executed by the testatrix. One was a will of October 29, 1953. It was holographic. No mention whatever was made therein of testatrix' daughter, Ruby K. Daniel. The three living children other than such daughter were mentioned by name, and mention was made that testatrix wanted the children of her deceased daughter to stand in place and stead of their mother, with each of her three living children to receive ¼th of her estate, and her grandchildren so referred to to receive the remaining ¼th. Marjorie Winn and Mary Conrad were named as independent co-executrices.

The other will was prepared by an attorney and was executed on November 5, 1953. Therein, after directing that Marjorie Winn and Mary Conrad collect and disburse among the other beneficiaries all her personal property and effects, such as books, keepsakes, equipment, etc., according to their fair conscience and best ideas of fitness, " * * * giving first consideration to the wishes of my beloved son, ROBERT N. DANIEL", she devised the remainder of her property like unto the provision made in the will of October 29, 1953. Incorporated into the paragraph so providing, however, was the following: "But if my son, Robert, should be incapacitated, I hereby instruct that his share and any money or monies due him be held in trust for him by my daughters. MARJORIE DANIEL WINN and MARY DANIEL CONRAD, and I appoint them trustees of such fund or interest to administer it at their discretion for the best benefit to his welfare and interest. And/or in the event of his death, I instruct that my bequest to him be held in trust for his daughter, CECELIA DANIEL, to be used for her best welfare and interests. And in such case I appoint my daughters, Marjorie and Mary, to be the trustees for such fund or interest."

In this will the testatrix expressly stated that she had made no provision for her daughter, Ruby K. Daniel, giving reasons for excluding her as a beneficiary. Testatrix provided that Marjorie Winn and Mary Conrad be appointed co-executrices, and as trustees for Robert Daniel in the event of necessity.

Marjorie Winn and Mary Conrad filed the "last will" for probate. Ruby K. Daniel and Robert Daniel appeared and contested. Following hearing in the probate court it was decreed that the "last will" be admitted. Contestants appealed to the District Court. While the case pended in the District Court it was thought well to file the wills of October 29, 1953, and November 5, 1953, in the probate court. This was done by Marjorie Winn and Mary Conrad. Admission to probate was refused because of the pendency of the litigation upon the "last will". Another appeal was taken therefrom to the District Court. There the case(s) were eventually docketed under

the same number as that already in litigation.

Robert Daniel died. His daughter, Cecelia North, succeeded to his position as a litigant. Cecelia North also filed an original suit by which the deeds of November, 1954, were attacked. The case was consolidated with that contesting the will. Through amendment of her pleadings Ruby K. Daniel likewise attacked the deeds, though on more restricted grounds.

Our description in the preceding paragraph has been somewhat simplified. It would be pointless to trace the entire litigation history through times when other entities were parties in representative capacities, etc. Neither have we mentioned the husbands of the married women, in respect to the litigation. Suffice it to say that conduct of the litigation has been procedurally correct and parties who should be present were when they should have been.

We believe we should mention the position of Ruby K. Daniel on the appeal. In the courts below she asserted that the testatrix was without testamentary capacity at all material times, and was without ability to transfer title to the rural real property by the deeds of 1954. The decision of the jury was to the contrary of her contention. She decided not to appeal. Cecelia North contended on trial that the testatrix' execution of the "last will" and her earlier execution and delivery of the deeds, should be annulled because induced by undue influence on the part of Marjorie Winn and Mary Conrad. She prevailed under the jury's findings. Judgment was entered for her. Marjorie Winn and Mary Conrad appealed. On the appeal, therefore, Ruby K. Daniel is before us only in respect to the matter of costs. The trial court acquitted her of any liability for court costs, assessing all costs against said appellants. Appellants are complaining thereof. Hence, Ruby K. Daniel is an appellee, though merely in respect to costs.

■ Rothermel v. Duncan, 369 S.W.2d 917 (Tex.1963), may be said to have brought into focus the questions arisen for deciding cases of this nature, and rules to be applied to resolve the questions so arisen. Therein is stated (p. 922): " * * * before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence."

■ Further quoting (from Rothermel v. Duncan, p. 922): "The burden of proving undue influence is upon the party contesting its execution. It is, therefore, necessary for the contestant to introduce some tangible and satisfactory proof of the existence of each of the above stated elements of undue influence." Further: " * * * it has even been held that one may request or even importune and entreat another to execute a favorable dispositive instrument; but unless the importunities and entreaties are shown to be so excessive as to subvert the will of the maker, they will not taint the validity of the instrument with undue influence." Further: "Influence that was or became undue may take the nature of, but is not limited to force, intimidation, duress, excessive importunity or deception used in an effort to overcome or subvert the will of the maker of the testament and induce the execution thereof contrary to his will. The courts of Texas treat the exertion of such influence in the execution of a dispositive instrument as a species of legal fraud."

Further quoting (from Rothermel v. Duncan, p. 922): "In the absence of direct evidence all of the circumstances shown or established by the evidence should be considered; and even though none of the circumstances standing alone would be sufficient to show the elements of undue influ-

ence, if when considered together they produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of the testator and resulted in the execution of the testament in controversy, the evidence is sufficient to sustain such conclusion. (Authority cited.) However, the circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence."

In the left hand column on page 923 of the Southwestern 2d Reporter, under Rothermel v. Duncan, the author of the opinion gives the generally adopted trial usages of a litigant who seeks to establish the existence of undue influence in connection with the execution of a will which is under attack because thereof. In other words the author points out the nature of proof ordinarily presented to prove: (1) the existence and exertion of an influence; (2) effective operation thereof so as to subvert or overpower the mind of the testator at time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence.

At one point in the brief of Cecelia North, appellee, is stated the following: "Nor does it (certain evidence of her adversaries) begin to explain, on any rational basis, why a loving mother, who had in November of 1953 discussed at great length Robert's drinking problem with her longtime attorney and who had provided for it carefully, and who in March had solemnly advised the doctor caring for him that he was a loving and dutiful son who had always looked after her and shown her great care and affection, and who had continued to live alone in the same home with him without any scrap of writing or living testimony that she feared to do so prior to September of 1954, would of her own accord and volition and without undue influence, so turn against him that within sixty days she had effectively deprived him

of his patrimony, and within ninety days had sworn he was crazy enough to be in jail and effectively segregated herself from him for the remainder of her life!"

In the quoted statement the attorney for Cecelia North was demonstrating the inadequacy of opposing evidence to meet a test of showing that the circumstances under which occurred the actions of the testatrix—in executing the deed and correction deed in November of 1954, and in executing her last will July 2, 1955,—were as consistent with the *absence* as with the *existence* of undue influence. It is, of course, to be remembered (pursuant to the quoted statements from Rothermel v. Duncan, supra) that if she would prevail the burden rested upon Cecelia North and was necessary to be discharged by her,—as contestant of the will and in her contentions attacking the validity of the deeds,—to show that the circumstances relied upon as establishing the elements of undue influence *were not equally as consistent with the absence as with the existence of undue influence.*

Therein lies the "key" to our decision that the evidence in the case falls short of amounting to evidence of probative force and effect to establish any issue of undue influence. It is the evidence of Cecelia North which thus falls short of the requisite of necessary evidence. Our holding, therefore, is that there is no evidence to support the judgment. Although the evidence might be deemed sufficient to show (1) the existence and exertion of an influence upon testatrix by her daughters, Marjorie Winn and Mary Conrad,—it falls short of evidence that (2) such influence effectively operated so as to subvert or overpower the testatrix' mind at the time of the execution of either the deeds or the will;—and it falls short of evidence that (3) the testatrix' execution of either the deeds or the will would not have occurred but for such influence. Otherwise stated: it was not established that testatrix' actions at the material times were performed under circumstances which rendered such ac-

tions inconsistent with the absence of operative subverting and overpowering influence on the part of Marjorie Winn and/or Mary Conrad.

The statement of facts consists of over two thousand pages. It would be impossible to mention or discuss all the evidence relied upon by Cecelia North to support the jury findings upon which judgment was rendered in her behalf. We think it fair, however, to outline events as follows: Cecelia North's father, Robert Daniel, had been a beloved child of his mother. Indeed it might properly be said that Robert, her only son, was for many years her favorite child. Counsel refers to an event as "the invasion of Avondale". Date thereof was on or about September 20, 1954. The "invasion" counsel has in mind was the occasion of Marjorie Winn's move from her permanent home in New Orleans, Louisiana, to Dallas, Texas and into the testatrix' home on Avondale Street. There testatrix and her son, Robert, had been living alone for well over a year. Counsel also bears in mind, furthermore, the quite considerable amount of time that Mary Conrad (who lived at a different address in the City of Dallas) spent with her mother, the testatrix, and with her sister, Marjorie Winn, after the "invasion".

At such time, testatrix' last will was that which had been prepared by an attorney in November of 1953. This has been previously mentioned. By it, Robert Daniel was provided for to the extent of one-fourth of testatrix' whole estate, which included the rural real estate. It is to be remembered that the will provided that in the event of Robert Daniel's incapacity his share in testatrix's estate was to pass to Marjorie Winn and Mary Conrad in trust for him, or, in the event of his death, for his daughter, Cecelia North.

Robert Daniel was what is known as "an alcoholic". He was known so to be by the testatrix in 1953 when the aforesaid will was executed, and it is without dispute in the record that she considered his condition such that it might be necessary that the share to be received by him, under her will, be in trust. Cecelia North, his daughter, was then a minor. She did not attain her majority until long after the litigation was begun.

Through testatrix' arrangements Robert Daniel was given "the cure," in a hospital primarily devoted to such a purpose. Time thereof was in the Spring of 1954. There is evidence in the record that before the time Marjorie Winn moved to Dallas and after Robert Daniel left the hospital and resumed living with testatrix, he had again "fallen off the wagon", and/or that testatrix believed such to be a fact. There is no evidence which disputes the fact that she so believed. Testatrix was then an elderly woman, having reached the age, with accompanying infirmities, when it would be well to have readily available someone to care for her in case of need. Circumstances, however, were such that she was living in the home and supplying readily available care for Robert—or believed that this was the actual state of affairs—rather than availed the security of any assured care from Robert. Undoubtedly, Marjorie Winn left her husband and family in New Orleans and moved to Dallas in September of 1954, either to help her mother care for Robert, to help Robert care for her mother, or disregarding Robert, to assume responsibility for the care of her mother.

Cecelia North's theory, as presented by her attorneys, was that Marjorie Winn moved in on Avondale either with the intention already conceived of gaining control of testatrix' property, or that she conceived that idea immediately after she arrived. In this she contended, Marjorie had the ready aid and wholehearted assistance of Mary Conrad. In respect thereto it is stated in her brief: "In September of 1954, two things happened: Marjorie Winn moved into Robert's and Beulah's home on Avondale, and Beulah Daniel began to keep a diary for the first time in her life. Within ninety days thereafter

Robert had been forced out of his home, never to see his mother again, and his mother had given all of her valuable property to Marjorie Winn and Mary Conrad."

The matter of the testatrix' diary is of considerable concern to Cecelia North. Exigencies of her case made it necessary that she contend that testatrix' institution of the practice of keeping a diary was at the instance and suggestion of Marjorie Winn and/or Mary Conrad,—and that what was written therein constituted statements of said daughters rather than independent statements of the mother. The substance of the diaries reflect much that constituted reasons why the testatrix did the very things she did do (at least as applied to Robert), towit: deed the rural real estate to Marjorie Winn and Mary Conrad, and thereafter treat such as property to which her daughters held the legal title.

We believe, and hold, that it was a circumstance which was as equally consistent with absence of undue influence as with the existence thereof when the testatrix instituted the practice of keeping a diary. The same thing is true of the maintenance of the practice once instituted, and of the recitations found in the diaries.

Concededly, for purposes of the appeal we are obliged to treat the testatrix as having maintained at all times that capacity generally referred to as testamentary capacity. This done, the case is one where questions are clarified in respect to existence, imposition, and operation of undue influence upon testatrix in connection with these actions of which complaint is made. Of course, if the testatrix in fact retained the equitable title to the rural real property after she executed the deeds, we must treat the entire title as having passed to Marjorie Winn and Mary Conrad under the residuary clause of the will. Due to the nature of the case as it developed, we must disregard any theory of the equitable title having been intended to belong to anyone else, for Cecelia North abandoned

such prior to the time the evidence was closed and the issues submitted to the jury.

The matter of Robert Daniel's having been "forced out of his home" (referred to in the Cecelia North brief), relates to December 9, 1954. Prior to that date he had been living in the home on Avondale with the testatrix and Marjorie Winn. On said date testatrix caused a lunacy warrant to be executed and her son Robert arrested and removed. A few days afterward she caused a restraining order to be served upon him in jail in order to supply a safeguard in the event of his release and any attempt on his part to come into her presence. Actually, Robert was released through the aid of his sister Ruby K. Daniel. The cases against him were never tried. Testatrix never again saw her son, but accompanied her daughter, Marjorie Winn, to New Orleans. Later she went to the Mayo Clinic in Rochester, Minnesota, after which she returned to New Orleans where she entered a hospital under an assumed name. She died there on August 18, 1955, presumably believing that Robert was beyond her help to combat the weakness she believed alcohol had caused, and that he had shifted his affections and dependence to his sister, Ruby K. Daniel, in her stead.

■ Counsel for Cecelia North was unable to develop any testimony from Marjorie Winn or Mary Conrad of benefit to establish her case on undue influence. Of course, the jury was entitled to disbelieve testimony of said witnesses, as it did. The jury, however, was not entitled to believe the contrary of that to which the witnesses testified. This it apparently did. That it did do so would not serve to endow what it believed with evidentiary character. Lacking and continuing to be lacking, was evidence that any influence upon the testatrix by Marjorie Winn and/or Mary Conrad effectively operated so as to subvert or overpower her mind at any material time, or that testatrix' acts at said times would not have taken place but for such influence.

We refer again to the requisite that circumstances relied upon must not be equally as consistent with the absence as with the existence of undue influence.

 If we are correct the District Court erred in its annulment of the testatrix' last will of July 2, 1955, decreed as such by the probate court, when it ordered admission thereof to probate. It likewise erred in its adjudication that the deeds of November, 1954 be annulled. In this, of course, decision is of little consequence if we are correct in our holding upon the last will, for the devisees of the rural real estate (passing under the residuary clause) would be Marjorie Winn and Mary Conrad, who were likewise the grantees under the deeds.

If and in the event it should be determined that we err in our holding and decision aforesaid, and that there was in fact evidence of undue influence, then we take occasion to state that we would hold that the findings of undue influence by the jury would be against the great weight and preponderance of the whole of the evidence in the case. The cause would in that event be remanded to the District Court for another trial though the Supreme Court deem us in error in our holding of "no evidence".

Under either of such holdings disposition of the case is entirely controlled, and it is therefore not essential that we decide questions posed by the other points of error presented by Marjorie Winn and Mary Conrad. We do not make any decision thereon.

The cross-assignments of Cecelia North are overruled. In view of our decision they either fail completely or relate to matters simply resolved in the Probate Court of Dallas County, in which, as we have held, the proper will of testatrix was ordered admitted to probate.

Judgment of the District Court upon the probate of the will is reversed. The decree in the probate court upon the matter in controversy should have been and is sustained, and accordingly the will of Beulah M. Daniel, dated July 2, 1955, is ordered admitted to probate. Judgment of the District Court annulling the deeds is reversed and rendered. Costs of appeal are assessed against Cecelia North. Costs in the proceedings conducted in the courts below, as applied to matters litigated, are assessed one-half against Cecelia North and one-half against Ruby K. Daniel.