**Addie Adele FURR, Appellant,**

v.

**E. E. FURR et al., Appellees.**

**No. 17008.**

Court of Civil Appeals of Texas.

Fort Worth.

April 4, 1969.

Rehearing Denied May 9, 1969.

Jack Connell, Bowie, for appellant.

Thornton & Thornton, Olney, Prothro & Sellers, Nelson, Montgomery & Robertson, and Allan D. Montgomery, Wichita Falls, for appellees.

## OPINION

MASSEY, Chief Justice.

Adam Furr died intestate on July 3, 1958, leaving as his sole heirs his widow, Fannie Belle Furr, a daughter, Adele Furr, and two sons, G. F. Furr and E. E. Furr. In October of 1958 Mrs. Furr qualified as community administratrix of the estate of her deceased husband. Adele Furr continued to live with her mother. She had resided with her parents for the years prior to her father's death.

Within a period of less than a year the friendly relationship existent at time of their father's death, as between the deceased's sons, on the one hand, and his wife and daughter, on the other hand, had suffered a deterioration. Adele, claiming that a large tract of land in Archer County, Texas had been a gift to her by her father before he died, became the adversary of her brothers in litigation in Archer County. Their mother would have naturally been drawn into that case as an interested party.

October 15, 1959, G. F. and E. E. Furr filed a petition in the estate case and prayed for relief against Adele Furr as well as their mother in her capacity as community administrator. In that connection see Furr v. Furr, 346 S.W.2d 491 (Fort Worth Civ.App., 1961, writ ref., n. r. e.).

October 2, 1959, shortly before the filing of the suit mentioned in the foregoing paragraph Mrs. Fannie Belle Furr formally executed a will giving $5.00 to each son, daughter-in-law, and grandchild; a total of $45.00. The rest and residue of her extensive estate was given her daughter, Adele, as follows: One-half outright and in fee simple and a life estate in the remaining one-half; with remainder to a niece, the Methodist Orphan's Home of Waco, Texas, and the Boys Ranch of Amarillo, Texas.

Our opinion in the aforementioned case: Furr v. Furr, 346 S.W.2d 491, was delivered April 21, 1961. Thereby the appeal taken by Adele Furr and Mrs. Fannie Belle Furr was ordered dismissed.

March 18, 1961 (while appeal in the aforementioned suit pended) Mrs. Fannie

Belle Furr executed a holographic will. Thereby she purported to will all her property to her daughter Adele. In the body of the instrument was written: *"Just keep the Furr men and their families* off of my home place and out of my house. They do not need to be on any of the land for anything that I own."

July 3, 1961, Mrs. Fannie Belle Furr formally executed a will, provisions of which bequeathed all her property to her daughter, Adele, with provision that if Adele predeceased her all the property would go to the Methodist Orphan's Home and the Boys Ranch.

October 17, 1964, Mrs. Fannie Belle Furr died. She was then approximately 74 years of age.

Upon application of Adele Furr the will of July 3, 1961 was admitted to probate in the County Court of Young County. Its probate was over the protest of E. E. and G. F. Furr. Their appeal was perfected to the District Court, where a jury found that the testatrix was unduly influenced at the time of the making of the will by Adele Furr. From judgment rendered in accord with such verdict Adele Furr appealed. The judgment was affirmed. See Furr v. Furr, 403 S.W.2d 866 (Fort Worth Civ.App., 1966, no writ hist.).

Subsequently Adele Furr offered for probate the holographic will of her mother, dated March 18, 1961; and in the alternative, if for any reason the holographic will was not probated, the prior will dated October 2, 1959. E. E. and G. F. Furr contested the probate of either will and the County Court entered judgment refusing probate of the holographic will, but admitting to probate the will of October 2, 1959. Both parties appealed. In the District Court all pleadings were amended and the entire controversy tried as one case. The jury found that each of the two wills were executed by the deceased as a result of undue influence on the part of Adele Furr. Thereupon judgment was rendered denying probate of both wills. Adele Furr appealed.

We affirm.

The evidence produced before the trial court was substantially identical to that introduced upon the previous trial when Adele Furr sought to have the will of July 3, 1961 admitted to probate. For convenience we will refer to and not repeat what was written in our opinion upon the appeal taken from judgment denying probate of that will. See Furr v. Furr, 403 S.W.2d 866, 868, et seq. Our holding (see p. 871) was that such evidence supported the finding of the jury—which was not against the great preponderance of the evidence—that Adele Furr completely dominated the mind and action of Mrs. Furr at the material times. (Indeed, we stated that such domination was prima facie established by such evidence as having existed from the time of death of Adam Furr, husband of the testatrix, though such comment as applied to times before July 3, 1961 is conceded to be dictum.)

In the instant case Adele Furr's first six points of error present the contention that the evidence introduced upon trial did not warrant the submission of any issue upon undue influence to the jury in connection with either the holographic will of March 18, 1961, or the more formal will of October 2, 1959; that the findings of the jury to the effect that there was undue influence which occasioned the execution of said wills, or either of them, were not supported by any evidence of probative force and effect; and/or that the jury findings to such effect were contrary to the great weight and preponderance of the evidence in the case.

In connection with the aforementioned points of error Adele Furr, as appellant, has taken the position that none of the evidence involving incidents that occurred after the dates on which the wills were made could be considered as bearing upon and establishing the exertion of any undue influence upon the testatrix at dates of

the respective wills; and that therefore such evidence should not be accorded any materiality or be accorded probative force upon the issues of undue influence.

■ Of course it must be conceded that a persistence and continuation of the condition of undue influence is material and undoubtedly proper of consideration, and therefore admissible, relative to the matter of why there was no changing of a will which had been earlier executed. An example would be a case where a will had been executed under circumstances where the testator was prima facie shown to have acted in the making and execution of the will because of the exertion of undue influence, but afterward and for periods of time where he was wholly relieved and freed from such influence he had taken no action to annul the will. In the instant case we do not believe that it could seriously be argued that there was any period subsequent to the time of testatrix's execution of the will of October 2, 1959 when she was relieved of the undue influence, if such was existent on the date that will was executed. We therefore will direct our discussion to a consideration of evidence which would bear upon and be properly considered by the jury and the trial court to support the finding that the testatrix executed the will on October 2, 1959 because of undue influence brought to bear upon her by Adele Furr.

In connection with the strife between Adele Furr and her two brothers, E. E. and G. F. Furr, antecedent to October 2, 1959, and the attendant ill-feeling between them arisen because her brothers resisted her claims to the land of her father in Archer County, and because of other disagreements, the reader is referred to the situation indicated in our discussion of Furr v. Furr, 346 S.W.2d 491. See also our statement of the evidence (nearly analogous as repleted in the instant trial) described in Furr v. Furr, 403 S.W.2d 866.

■ At all material times Adele Furr was living with her mother in the "home place", and was almost constantly in the company of her mother; while E. E. and G. F. Furr were living in other homes with their own families. From evidence in the record before us it was prima facie established that the testatrix had come under the domination of her daughter Adele by the middle of September, 1958. This would have been before she made her will of October 2, 1959.

That such domination was theretofore exercised upon the mind of the testatrix is to be found in the testimony of Jess Wright, long time and close friend of both Adam Furr and testatrix. His testimony described in Furr v. Furr, 403 S.W.2d 866, was substantially repeated. However, not heretofore mentioned was the fact that after the occasion of the 1958 "family conference" to discuss Adam Furr's estate (pursuant to when there was disagreement and dispute between Adele Furr and her two brothers) Wright went to the Furr home and discussed a proposal for settlement of the dispute upon division of the estate. To this proposal testatrix was at first agreeable. The witness' testimony was that he first discussed the settlement with testatrix out of the presence of Adele; that testatrix indicated that the proposal "would be fair", but that thereafter, when Adele appeared and was apprised of the settlement proposal she vetoed it without consulting testatrix. Upon such action by her daughter the testatrix remained silent and made no comment. The proposal was that the property be divided by agreement of the parties substantially as the laws of this state provide in the case of one dying intestate, with the court required to make a partition in kind.

In addition to Wright's testimony, as above, there was other evidence from the same witness concerning statements and occurrences which might have properly been considered by the jury as having taken place prior to October 2, 1959. We hold that thereby was the issue of undue influence raised for the jury's determination in this case.

We have furthermore concluded that the evidence with which the record is replete concerning the situation existent between the parties after October 2, 1959 (and incidents relating thereto and demonstrative thereof) was admissible and proper to be considered by the jury in arriving at the factual conclusion that the will of such date was executed under undue influence. Even independently considered do we believe such evidence of probative force and effect sufficient to support the judgment. The same would of course be true in regard to the holographic will of March 18, 1961.

Of value relative to the argument of Adele Furr concerning the impropriety of consideration of evidence other than upon circumstances and events prior to the immediate time that the testatrix executed the wills is the discussion at 124 A.L.R. 433 (supplemented at 168 A.L.R. 969), under Annotation: "Admissibility of evidence on question of testamentary capacity or undue influence in a will contest as affected by remoteness, relative to the time when the will was executed, of the facts or events to which the evidence relates."

Appropriate to the situation in the instant case is the statement: "It must be conceded that it requires much less influence to control the testamentary act of a person of weak mind or infirm will than one of vigorous intellect and determined character." Craycroft v. Crawford, 275 S.W. 124, 129 (Dallas Civ.App., 1925, reversed at Tex.Com.App., 285 S.W. 275).

Appropriate also are the statements found in the opinion of the Commission of Appeals, adopted by our Supreme Court, in Craycroft v. Crawford, 285 S.W. 275, 281, viz: "Habitual subjection of one person to the control of another is circumstantial proof of a purpose to acquire and use undue influence. It is some evidence, too, of the acquest in reality. (citing cases) And where actual opportunity to exert such influence in immediate connection with execution of the will is not precluded by other proof, habitual subjection becomes relevant to successful use of the influence at that moment." See also language of the court at page 282 of the same opinion, viz: "The power thus shown to have been acquired and used prior to and after and, maybe, on the date of the will cannot, as a matter of law, be given the character of due influence. It is for a jury to weigh the relevant evidence and say whether the influence it shows was due or undue. If it is thus found to be undue, the fact and the evidence by which it is proved is entitled to be considered as tending to establish use of a like influence as to the will itself."

Fully applicable, also, are the statements upon the law in our prior opinion upon the will of July 3, 1961. Furr v. Furr, 403 S.W.2d 866, 870. Our more extensive discussion in the present instance is because of the position taken by appellant Adele Furr in her attack upon the probative value, as applied to the execution of the earlier wills, of evidence bearing upon incidents occurring subsequent to the dates of the executions of those presently advocated. Here, as in our consideration of the later will on the earlier appeal, do we recognize that the ultimate fact is whether such undue influence as was exerted upon testatrix actually occasioned her acts at the time she executed the wills.

A few years ago the author of this opinion examined a record in which the contention was similar to that made here by Adele Furr as appellant, and concluded that there was no evidence of undue influence in connection with the execution of a will attacked upon such ground. There a judgment predicated upon a finding of undue influence was reversed. Premise of the holding was that when evidence in such a case falls short of amounting to evidence of probative force and effect to establish the issue of undue influence—consideration given the requisite that circumstances relied upon to establish such must not be equally as consistent with the absence as with its existence—a judgment

based upon a jury finding of undue influence cannot stand. See Winn v. Daniel, 386 S.W.2d 293 (Fort Worth Civ.App., 1965, writ ref., n. r. e.). Involved in our holding in the instant case would be our conclusion not only that there was evidence of probative' force and effect showing the fact of existence of undue influence, but that the facts introduced to show it would not be as equally consistent with the absence as with the existence of that influence.

■ Furthermore, we hold in the instant case that the jury finding upon the inquiry made relative to undue influence was not contrary to the great weight and preponderance of appropriate evidence of probative force and effect.

Adele Furr cites and relies upon the case of Morris v. Morris, 268 S.W. 187 (Texarkana Civ.App., 1924, reversed on other grounds by Commission of Appeals at 279 S.W. 806). The event to which the proffered testimony related was by the opinion shown merely as having "occurred just prior to the death of Mrs. Morris, and long after the execution of the will." The case is among those annotated in 124 A.L. R. 433, cited hereinabove. Actually the holding would have relation to the matter of whether there was an abuse of discretion on the part of the trial court in excluding evidence as too remote. It is thus treated in American Law Reports. We do not consider the case to be authority for appellant's contention that the evidence we have here held admissible, and of probative force and effect upon the issue of undue influence, could not be accorded such status.

Other authorities relied upon by appellant were cited to the court by her and considered at time of our decision in Furr v. Furr, 403 S.W.2d 866. Having been deemed not to control our disposition in that case we likewise consider that these authorities should not control disposition of the instant appeal.

Remaining points of error complain of the refusal of the trial court to admit testimony of Adele Furr concerning events observed by her but in which she did not participate; statements concerning the treatment in abuse of the testatrix by the wife of G. F. Furr and concerning statements made at the time by G. F. Furr to his wife in an encouragement of such treatment; and which involved treatment by E. E. Furr and G. F. Furr of testatrix on another occasion wherein she (Adele) overheard statements made by testatrix to her aforesaid sons and observed the actions of testatrix attempting to free herself of enforced custody which her sons sought to impose. Upon motion such evidence was excluded under provisions of Vernon's Ann.Tex.St. 3716, "(Evidence) In actions by or against executors, etc.", commonly called the "Dead Man's" statute.

■ We hold that the evidence was properly excluded. In International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W. 2d 1040 (1931) the authoritative cases up to time of the opinion were cited, all indicated as honoring the decision of Parks v. Caudle, 58 Tex. 216 (1882), language from which was quoted, as follows: "In our opinion, a party is prohibited from testifying, not merely as to statements by the deceased to him, or transactions between him and the deceased, but also as to such statements to or transactions between deceased and third persons, and that, too, although occurring when the witness had no interest therein. The statute had in view, primarily, a transaction between parties, one of whom had since died, and whose heirs or representatives were engaged in a suit with the survivor. As to such a transaction neither party was allowed to testify. The survivor should not, because the mouth of the other party to the transaction was forever closed. *But the heir or representative, if perchance he knew aught of the facts, although it was not a transaction with him, was also forbidden to testify about it; for to allow him to do so, would be to give him the advantage' over*

*one whose mouth the statute had closed."* (Emphasis supplied.)

Appellant cites language from Edelstein v. Brown, 95 S.W. 1126 (Tex.Civ.App., 1906, writ granted) which would appear to hold to the contrary. Therefrom it would appear that in part, at least, the proffered evidence should have been admitted. However, in the opinion of the Supreme Court on an appeal therefrom it appears that its affirmance was determined on grounds which removed any necessity to rule or write upon the same ground of admissibility that the intermediate appellate court had discussed. The Supreme Court expressly so stated in a comment relative to the assignment presented to it raising the question. See Edelstein v. Brown, 100 Tex. 403, 100 S.W. 129, 130 (1907). We do not consider the holding of the Court of Appeals authoritative. Other authorities cited by appellant do not appear to be in point.

Judgment is affirmed.